# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

ANTHONY ROSS McCULLOCH,  )
                       )
     Movant,       )
                       )
v.                    )    Case No.   CV410-003
                       )                  CR408-045
UNITED STATES OF AMERICA,  )
                       )
     Respondent.   )

## REPORT AND RECOMMENDATION

After Anthony Ross McCulloch pled guilty to violating 18 U.S.C. §

2113(a) (bank robbery), CR408-35, doc. 31, he took no appeal but instead

filed the 28 U.S.C. § 2255 motion reached here. Doc. 32. As part of his

plea bargain, however, he waived certain appeal rights:

> LIMITED WAIVER OF APPEAL: To the maximum extent
> permitted by federal law, the defendant voluntarily and expressly
> waives the right to appeal the conviction and sentence and the
> right to collaterally attack the *sentence*[1] in any post-conviction
> proceeding, *including* a § 2255 proceeding, *on any ground*, except
> that: the defendant may file a *direct appeal* of his sentence if it
> exceeds the statutory maximum; and the defendant may file a
> *direct appeal* of his sentence if, by variance or upward departure,
> the sentence is higher than the advisory sentencing guideline range
> as found by the sentencing court. The defendant understands that
> this Plea Agreement does not limit the Government's right to

---

[1] Hence, he did not waive his right to collaterally attack the *conviction*. *See Fields v. United States*, 2010 WL 4735984 at * 3 (S.D. Ga. Oct. 28, 2010) (similar wording).

appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of the sentence.

Doc. 30 at 2 (emphasis added).[2]

McCulloch never appealed. Instead, now seeks collateral relief by (in Ground One) referencing the "alleged" bank robbery and attempting to surmount the above waiver by arguing that he received ineffective assistance of counsel (IAC) from his retained attorney, Karen Dove Barr. She failed, he insists, to "adequately & thoroughly investigate all aspects of the alleged bank robbery." *Id.* at 4. Ground Two -- really a continuation of Ground One -- is based on two of Barr's alleged promises. First, she "repeatedly 'PROMISED, ASSURED AND GUARANTEED' him that if he accepted the Government's tendered plea agreement, he would receive a prison sentence of NO MORE THAN FOUR YEARS. *Id.* at 5. Second, she promised that, "despite any language contained in the plea agreement, the *alleged* 'firearm' offenses [which caused his increased sentence] would be extricated from the Presentence Investigation Report prior to sentencing." *Id.* (emphasis added).

---

[2] Because of formatting issues, the Court's docketing system often "screen-prints" on each document's page pagination different than the original, paper-copy of the document. All "doc." page numbers cited here are the "screen-print" numbers.

In Ground Three McCulloch raises a sentencing claim, contending that his sentence was erroneously enhanced. *Id.* at 6-7. And in Ground Four he brings a second, sentencing-based claim -- that Barr was ineffective for failing to object to the denial of his "Acceptance of Responsibility" reduction in his sentence computation. *Id.* at 8.

# I. ANALYSIS

## A. Governing Standards

Five sets of governing principles must be applied here, and the first four apply even where no appeal rights have been waived. First, McCulloch "bears the burden of establishing the need for § 2255 relief, as well as that of showing the need for an evidentiary hearing." *Oung v. United States*, 2010 WL 2037379 at * 2 (D. Mass. May 18, 2010); *see also Williams v. Allen*, 598 F.3d 778, 788 (11th Cir. 2010). Second, any claims not appealed or not raised on direct appeal are procedurally defaulted, *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004), though claims of ineffective assistance of counsel (IAC) are not. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Third, "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on [IAC]."

*Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Lalani v. United States,* 315 F. App'x 858, 860-61 (11th Cir. 2009).[3]

Fourth, a defendant who enters an unconditional plea of guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred *prior* to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (emphasis added). That is, "[a] defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of *competent* counsel, waives all non-jurisdictional

---

[3] As this Court previously explained:

> "Under the procedural default rule, a [movant] generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [he] is barred from presenting the claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir.2004). Accordingly, any grounds raised here that could have been raised on appeal are procedurally defaulted unless [movant] can establish cause and prejudice excusing his default (or establish his actual innocence of the crime). *Id*. at 1234 (*citing Bousley v. United States*, 523 U.S. 614, 622 (1998)); *United States v. Nyhuis*, 211 F.3d 1340 (11th Cir. 2000). It is well established that "constitutionally '[i]neffective assistance of counsel ... is cause'"for excusing a procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citations omitted).

*Mills v. United States*, 2010 WL 4237802 at * 2 (S.D. Ga. Sep. 29, 2010). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id*.

defects in that defendant's court proceedings." *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997) (emphasis added); *see also United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003).[4] The bar applies both on appeal and on collateral attack. *See United States v. Broce*, 488 U.S. 563, 569 (1989). "A defendant who wishes to preserve appellate review of a non-jurisdictional defect while at the same time pleading guilty can do so only by entering a 'conditional guilty plea' in accordance with Federal Rule of Criminal Procedure 11(a)(2)." *Pierre*, 120 F.3d at 1155.

That means that § 2255 movants ordinarily may challenge their pre-guilty plea constitutional claims only by showing that the advice they received from counsel undermined "the voluntary and intelligent character of the plea." *Tollett*, 411 U.S. at 267. This includes "defects in the procedure by which the plea was received or circumstances which make the plea other than voluntary, knowing and intelligent." 5 WAYNE

---

[4] That means that they waive all substantive claims that could have been raised before the plea (hence, pre-plea claims). *Franklin v. United States*, 589 F.2d 192, 194-95 (5th Cir. 1979) ("By entering a knowing, voluntary, intelligent guilty plea on the advice of competent counsel, [Petitioner] has waived all nonjurisdictional complaints ... [such as] claims regarding *Miranda* warnings, coerced confessions, perjury and illegal searches and seizures...."); *Washington v. United States*, 2010 WL 3338867 at * 15 (S.D. Ala. Aug. 5, 2010).

R. LaFave, et al., Criminal Procedure § 21.6(a) (3d ed. Nov. 2010).  It also includes cases where the guilty plea was "induced through threats, misrepresentations, or improper promises, [such that] the defendant cannot be said to have been fully apprised of the consequences of the guilty plea. . . ." *Williams v. McNeil*, 2010 WL 3384927 at * 5 (S.D. Fla. Jul. 20, 2010) (citing *Mabry v. Johnson*, 467 U.S. 504, 509 (1984)).

Fifth, courts -- subject to the miscarriage of justice exception -- uphold appeal waivers.  *See, e.g., United States v. Polly*, ___ F. 3d ___, 2011 WL 135723 at * 7 (10th Cir. Jan. 18, 2011) (direct appeal waiver will be enforced if defendant knowingly and voluntarily waived his appellate rights and if enforcing it would not result in a miscarriage of justice); *United States v. White*, 390 F. App'x 114, 116 (3rd Cir. Aug. 5, 2010); *Sotirion v. United States*, 617 F.3d 27, 36 (1st Cir. 2010) (the miscarriage of justice exception to the enforcement of a valid waiver of the right to appeal requires a strong showing of innocence, unfairness, or the like, and is demanding enough to prevent defendants who have agreed to waive their right to appeal from successfully pursuing garden-variety claims of error); *United States v. Morrison*, 2011 WL 286365 at *

4 (10th Cir. Jan. 31. 2011). *United States v. Bushert*, 997 F.2d 1343, 1347-50 (11th Cir. 1993).

## B. McCulloch's Claims

On McCulloch's first two Grounds he essentially argues this: He robbed a bank but with an orange-tipped "starter pistol" incapable of firing bullets. Doc. 32 at 24 (in his brief he insists that, had counsel effectively investigated, "she would have undeniably discovered that the so-called firearm which was supposedly brandished and discharged was in fact or arguably a 'starter' pistol fitted with an orange tip attached to the end of the barrel entirely incapable of inflicting death, or any bodily injury, or firing bullets.").[5] The government, he contends, knew this yet illuminated eyewitness claims that they saw or heard his gun go off, even though others said not. *Id.*

McCullock insists that by offering evidence from witnesses who (he contends) were lying, the government improperly "supported" *armed* bank robbery allegations that unfairly enhanced his sentence. *Id.* Yet,

---

[5]  McCulloch, found by the sentencing judge to be "dissembling" and sentenced accordingly, doc. 37 at 30, 39, fails to keep his story straight even within his latest filings. *See* doc. 40 at 13 (later brief in which he says he told the Probation Officer that "he had in fact possessed a 'BB' gun during the robbery."); *but see* doc. 32 at 4 (referencing the "alleged bank robbery," thus implying that he denies the bank was ever robbed, much less that he robbed it).

he concludes, if Barr had competently investigated his case and not lied to him (she "guaranteed, promised and assured" him that he faced a four-year maximum sentence, doc. 40 at 3-4), she would have developed a winning defense to the extent that the "gun" component would have been "extricated from the Presentence Investigation Report [PSI]"), doc. 32 at 5, thus resulting in a lower sentence exposure. *Id.* at 6-7.

To the extent these Grounds (claims) go to pre-plea attorney performance, and not attorney performance in counseling and assisting McCulloch's guilty plea, they are waived. Indeed, by "entering into the negotiated plea agreement, [McCulloch] was telling his lawyer not to conduct any further investigation and not present at a trial proceeding any legal defenses that he may be entitled to as it relates to his case." *Glaubman v. United States*, 2009 WL 2970495 at * 20 (S.D. Fla. Sep. 16, 2009). In fact, that *was* the plea bargain here -- spare the government from having to respond to all pre-plea issues McCulloch now seeks to raise *in exchange* for reduced sentence exposure.[6] *See Premo v. Moore*, ___ U.S. ___, 131 S. Ct. 733, 741-42 (2011) (in upholding a state court's

---

[6] McCulloch was indicted for violating 18 U.S.C. § 2113(a) & (d) -- bank robbery *and* doing so while assaulting or putting in jeopardy the life of another by the use of a dangerous weapon or device, doc. 3 at 1-2, but pled down to the lesser included offence of simple bank robbery in violation of only § 2213(a). Docs. 22, 30, 31.

no-IAC determination, the Court underscored the give and take of a plea-bargain premised on a dropped suppression motion).

Not *"Tollet* waived," in contrast, is his claim (part of Ground Two) that Barr lied to him while counseling him on his guilty-plea. Doc. 32 at 23-28; doc. 40 at 4 ("If he had been told the truth by his attorney . . . that he would be facing a much, much, longer term of imprisonment, he would have insisted on going to trial"). Plus, he says, he would not have been surprised by the seven-level enhancement (because of the gun) that he suffered at sentencing. Doc. 32 at 23.

In response, the government correctly cites to portions of the guilty plea transcript showing McCulloch, under oath, stating that: (a) he understood the charges against him; (b) no one had promised him anything or misled or coerced him into pleading guilty; (c) he understood his maximum and minimum sentencing exposure; (d) his lawyer could not tell him what sentence would be imposed, and in fact the sentence could be more severe than he anticipated; (e) he was satisfied with Barr's

services and there were no witnesses he wished she had interviewed.

Doc. 38 at 3-4 (government's brief); doc. 36 (guilty plea transcript).[7]

---

[7] During that hearing McCulloch told the Court that he understood that he must tell the truth or face perjury charges. Doc. 36 at 5. The judge also said: "If you would rather have the Court explain to you certain terms, or legal matters, let me know, and I will endeavor to do so. . . . Now, do you have any questions? DEFENDANT: No, sir." *Id.* at 5. The judge then proceeded to explain to McCulloch that he had a right to a jury trial, to hold the government to its reasonable-doubt burden of proof, and the right to counsel during the entire process. *Id.* at 10-12. McCulloch responded that he understood that, and that the expense of his retained counsel did not influence his decision to plead guilty. *Id.* at 13. The judge also explained that McCulloch had a right to confront the witnesses against him, that he enjoyed the presumption of innocence, and the right to call defense witnesses at trial, etc., but that he was giving all these rights up by pleading guilty. *Id.* at 13-15. McCulloch then agreed that "A plea of guilty says I did it. Isn't it? A. Yeah. Right." *Id.* at 17.

The judge additionally explained that merely by pleading guilty McCulloch would give up his right to challenge pre-plea defects in the process otherwise due him, including the government's investigation of him, the way the grand jury was constituted and proceeded, "and *the way your lawyer has represented you* and the way the Court, including the magistrate judge, has dealt with you. You are giving your stamp of approval to that. Do you understand? A. Yes, Your Honor." *Id.* at 18 (emphasis added). Later, the judge asked him: "Q. Now are you satisfied with your lawyer and the way she has represented you in this case? A. Yes, Your Honor." *Id.* at 21.

The Court also told McCulloch that the judge then knew nothing about the case, *id.* at 17, but would be required to calculate the sentence pursuant to the U.S. Sentencing Guidelines, *id.* at 24, that "[a]lmost all of the sentences are within the guidelines," but "your lawyer *can't tell you what sentence will be imposed, because obviously she doesn't know either.*" *Id.* at 25 (emphasis added). However, McCulloch's criminal history and his acceptance of responsibility, and telling the truth, would significantly impact it. "Do you understand? A. Yes, Your Honor." *Id.* For good measure, the Court then reiterated that McCulloch's lawyer "cannot tell you exactly what sentence will be imposed. I do not know what that will be." The presentence process would have to be first completed. *Id.* Again, McCulloch said that he understood. *Id.* at 25-26.

The Fed. R. Crim. P. 11 transcript and above legal principles show

that Ground Two fails. McCulloch had no right to rely on his lawyer's

---

Q. Okay. Sometimes the sentence is more severe than [the ] one anticipated, and you would still be bound by your plea agreement. Do you understand that?

A. Yes, Your Honor.

*Id.* at 26.

Finally, the Court reiterated to McCulloch that his appeal waiver waived his right to complain of pre-plea defects: "To a large measure, many people find themselves in jail and prisons, one of the first people they attack is their lawyer. They filed a lawsuit that the lawyer was incompetent, or the government beat you, or did something that violated your rights, and therefore there is something wrong with the prosecution, or the grand jury was wrong, [or] the FBI tortured you, or whatever. You are giving up all that. Do you understand that? A. Yes, sir." *Id.* at 27.

Q. You are restricted from appealing. If I sentence you outside the law, or if I do not go by the advisory guidelines, if I sentence you in excess of those, you may appeal. Do you understand that?

A. Yes, Your Honor.

Q. Now, I have tried to review the sentencing procedure, and tell you what [sic] supervised release, and cover things that I think are essential for your understanding of this procedure. Do you have any questions of the Court or your lawyer?

A. No, Your Honor.

*Id.* at 27-28.

After the government read the plea agreement, *id.* at 29-30, the Court asked McCulloch: "[H]as anyone made you promises that are not in the written agreement? A. *No*, Your Honor." *Id.* at 31 (emphasis added). McCulloch, who does not allege that any of government promises were violated, now insists his lawyer in fact made a promise to him -- that he would not face any more than a four-year sentence. Doc. 32 at 5. He does not attempt to reconcile this later-in-time assertion with his sworn testimony, to the district judge, that no one had made any promises to him.

alleged promise of a four-year sentence cap -- the guilty-plea judge warned him otherwise and he said he understood it. *See supra* n. 8; *Horsfall v. United States*, 2011 WL 203268 at * 3 (S.D. Ga. Jan. 3, 2011).

Ground Three -- that movant's sentence was erroneously enhanced by the gun used during the robbery, doc. 32 at 6-7, plus any ineffective-assistance claim based on it, *id.* at 21 -- also fails. First, adequate evidence[8] at his sentencing hearing supported the judge's finding that he in fact used a gun during the robbery. *See* doc. 37 at 9 ("He turned and fired, I believe, two shots. . . ."); *id.* at 11 (witness saw and heard the gun fired); *id.* at 17 ("it was probably a starter gun"). And second, McCulloch does not show how his attorney -- who otherwise cross-examined and resisted the government's evidence, doc. 37 at 12-20 -- could have otherwise succeeded in knocking that evidence out. (Indeed, he simply cites perceived conflicts in the evidence and assumes that such conflicts alone demonstrate *Strickland*-level deficiency.)

---

[8] While a jury applying the reasonable doubt standard must be used to prove the elements of each offense at trial, only by the preponderance of the evidence may the government prove the sentencing factors that guide or confine a judge's discretion in sentencing an offender within the punishment range prescribed by the charging statute. *United States v. O'Brien*, 130 S. Ct. 2169, 2174-75 (2010); *United States v. Lindsey*, 2011 WL 117110 at * 13 (9th Cir. Jan. 14, 2011) (sentencing enhancements for brandishing or discharging firearm are sentencing factors to be found by judge, rather than offense element to be proven by jury); *United States v. Krieger*, 628 F.3d 857, 2010 WL 4941979 at * 4 (7th Cir. Dec. 7, 2010).

As for Ground Four (the "Acceptance of Responsibility" IAC claim), McCulloch repeatedly lied to the Probation Officer about what he did, *id.* at 18-19; PSI at 6-7 ¶ 21; *see also* doc. 32 at 24 (he now admits he used a starter gun), and even admits that he obstructed the Officer. Doc. 40 at 12-13 (in his § 2255 reply brief he *admits* that he refused to answer the Probation Officer's simple question: "'Did you, Mr. McCulloch, possess a firearm during the robbery?'"); *id.* at 13 (he says he told the Probation Officer that "he had in fact possessed a 'BB' gun during the robbery"); *but see* doc. 32 at 24 (in his § 2255 filing he admits he used a starter gun); *but see* doc. 32 at 4 (here he claims it was an "alleged bank robbery," thus denying the crime even happened). He therefore stripped himself of the responsibility-acceptance sentencing benefit, and cannot blame others for this (he does not claim, for that matter, that Barr told him to deceive the Probation Officer). Indeed, he can't even keep his story straight *now*. *See* starter pistol versus BB gun cites *supra*; *see also* doc. 37 at 30 (sentencing judge finding that defendant lied *at the sentencing hearing itself*); *id.* at 39 (sentencing him at the top of the U.S.S.G. guidelines range "in view of the defendant's steadfast dissembling").

Finally, the government correctly notes (doc. 38 at 12) that alternative, reinforcing grounds support denial of Grounds Three and Four (the sentencing claims): McCulloch's appeal waivers. Again, he retained the right to take a direct appeal on sentencing issues (and limited at that), but *no* § 2255 rights *at all* on sentencing issues. So in addition to denying Grounds three and four on the merits, and also because they are procedurally defaulted (as they were not raised on appeal), *see supra* n. 3, they are further barred by the collateral appeal waiver on all sentencing issues -- and no miscarriage of justice has been shown.

McCulloch, who can be prosecuted for lying *now*,[9] argues against the waivers. Doc. 40 at 8. In so doing, he obviously appreciates that he swore he understood the consequences of pleading guilty and waiving his

---

[9] Whether in a witness chair before this Court or while crafting court filings in a prison cell, *no one* (especially a *convicted criminal*) is permitted to lie to, or otherwise knowingly mislead this Court. All must swear to any facts advanced in quest of judicial relief, and thus be subject to criminal prosecution if they commit perjury, or submit a false declaration in violation of 18 U.S.C. § 1623(a). *See, e.g., United States v. Dickerson*, CR608-36, doc. 47 (S.D. Ga. Dec. 11, 2008) (convicted of violating 18 U.S.C. § 1623(a) while seeking 28 U.S.C. § 2255 relief); *aff'd*, 2010 WL 4409382 (11th Cir. Nov. 8, 2010), cited in *Irick v. United States*, 2009 WL 2992562 at * 2 (S.D.Ga. Sept. 17, 2009).

appeal rights.[10]  Hence, in his reply brief (after the government illuminated his waivers), he has coyly slipped in some hedge-phrases:

> Just because Movant was supposedly well advised of both the nature of [the] charges and the consequences of his guilty plea ... does not confirm the fact *he actually understood* any adverse repercussions or consequences that could very well occur as a direct result of accepting the plea agreement.  Movant maintains *only* that his plea was induced by *his mistaken belief* that his penal liability was limited to a four-year sentence, which misunderstanding he attributes to his defense counsel's ineptitude *and/or his own "cognitive deficiency."*

Doc. 40 at 8 (emphasis added).  So, even though he previously (under oath) said he understood what was told to him then, it turns out that he didn't *really* understand, and evidently was just pretending that he did: "Movant respectfully asserts that by all appearances he had answered the Court's various questions *in a manner that would appear* to be understood, knowledgeable and cognizant." *Id.* at 7-8 (emphasis added).

Of course, if defendants could make that claim (that they "didn't *really* understand" after telling the guilty-plea judge that they did), there could be no finality to any waiver-based, criminal proceedings, as courts would have to pause and hold evidentiary hearings delving into what a defendant *really* understood, as opposed to just *sort of*, or *maybe*

---

[10]  His answers and statements under oath carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

understood. And since only the movant could testify as to what he "really" understood at the plea hearing, circular logic ("I didn't understand because I say I didn't"), rather than common sense and everyday reality, would rule.

All of which is why courts "strongly presume that the defendant's statements at the guilty-plea colloquy were truthful, including his admission of guilt and his representation that he understood the consequences of his plea. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir.1994)." *United States v. Baxley*, 2010 WL 4409377 at *1 (11th Cir. Nov. 8, 2010). They reach that presumption because of the elaborate procedures courts undertake to head off such claims:

> The district court must "conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000). This general obligation requires the court to address three core concerns underlying Rule 11: (1) that the guilty plea be free from coercion; (2) that the defendant understand the charges against him; and (3) that the defendant be aware of the direct consequences of his guilty plea. Rule 11 directs specifically that the court inform the defendant of, and *make sure* the defendant understands, certain matters. *See* Fed. R. Crim. P. 11(b)(1)(A)-(N). In pertinent part, the court is obligated to inform defendant of "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N).

*United States v. Jackson,* 2010 WL 3784472 at * 1 (11th Cir. Sep. 30, 2010) (cite omitted; emphasis added). And, once a court has done so -- and the record shows it was done here, *see supra* n. 8 -- movants like McCulloch must overcome that strong presumption.

He has not. The guilty-plea judge questioned him throughout the guilty-plea hearing, repeatedly asking him if he understood, and McCulloch, under oath, doc. 36 at 6, repeatedly represented that he understood the explanations accorded him. *See supra* n. 8. The judge explained to McCulloch the consequences of his waivers, *id.*, and found that he was "in full possession of his faculties[:] I am confident he understands the meaning of the charge. I believe he understands the consequences of his plea, and the facts which the government must prove, and, of course, by his plea of guilty he admits the essential elements of the offense." Doc. 36 at 34; *see also* doc. 36 at 27-28 (movant stated he understood the judge's appeal/§2255 waiver explanation, which was in simple, layman-level language). McCulloch pleads no objective facts to undermine the Court's findings that he in fact understood the basic explanations provided to him, and his own subjective, non-credible insistence otherwise is rejected. He is not entitled to an evidentiary

hearing (raised as Ground Five in his original motion, doc. 32 at 31, and Ground Seven in his reply brief, doc. 40 at 24),[11] and thus Grounds Three and Four should be denied on the additional, waiver-based grounds.

## II. CONCLUSION

Anthony Ross McCulloch's 28 U.S.C. § 2255 motion should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  17th  day of February, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA

---

[11]  In his reply brief movant also raises another additional ground, "Ground Six," which is simply a procedural discussion about the "summary judgment rule" in § 2255 cases. Devoid of substantive content, it also is denied.